UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD JOHNATHAN HART,

       Petitioner,

                                      CASE NO. 2:11-CV-11916

v.                               JUDGE GEORGE CARAM STEEH

                                      MAGISTRATE JUDGE PAUL J. KOMIVES

THOMAS BIRKETT,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.     RECOMMENDATION ................................................................ 1
II.    REPORT ........................................................................ 1
    A.    *Procedural and Factual Background* ............................................. 1
    B.    *Statute of Limitations* ......................................................... 7
    C.    *Standard of Review* ........................................................... 11
    D.    *Jurisdiction to Sentence Petitioner (Claim I)* ...................................... 14
    E.    *Habitual Offender Notice (Claims II and III)* ...................................... 17
    F.    *Ineffective Assistance of Counsel (Claim IV)* ..................................... 20
        1.    *Clearly Established Law* ................................................... 20
        2.    *Analysis* ................................................................ 22
    G.    *Recommendation Regarding Certificate of Appealability* ........................... 23
        1.    *Legal Standard* ......................................................... 23
        2.    *Analysis* ................................................................ 24
    H.    *Conclusion* .................................................................. 25
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ..................................... 25

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural and Factual Background*

       Petitioner Donald Johnathan Hart is a state prisoner, currently confined at the Central

Michigan Correctional Facility in St. Louis, Michigan.  On June 27, 2002, petitioner was charged in an information filed in the Clinton County Circuit Court with nine counts: two counts first degree home invasion, MICH. COMP. LAWS § 750.110a(2) (Counts 1-2); four counts of second degree home invasion, MICH. COMP. LAWS § 750.110a(3) (Counts 3-6); unlawfully driving away an automobile (UDAA), MICH. COMP. LAWS § 750.413 (Count 7); possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b (Count 8); and felon in possession of a firearm, MICH. COMP. LAWS § 750.224f (Count 9).  This information was docketed in Case No. 02-7201-FH.  On March 14, 2003, the prosecutor filed an habitual offender notice in this case.  On the same date, a second information was filed under Case No. 03-7324-FH, charging petitioner with five additional counts occurring while he was on bond in the 7201 case: first degree home invasion (Count 1); felony-firearm (Count 2); felon in possession (Count 3); second degree home invasion (Count 4); and absconding, MICH. COMP. LAWS § 750.119a.

On March 18, 2003, the parties entered into a plea agreement.  To facilitate the agreement, the prosecutor filed an amended information in the 7201 case adding counts of receiving and concealing stolen property, MICH. COMP. LAWS § 750.535(3)(a) (Count 10); and unlawful use of a motor vehicle, MICH. COMP. LAWS § 750.414 (Count 11).  Under the terms of the agreement, as explained by the prosecutor, petitioner agreed to plead guilty to Counts 10 and 11 (receiving stolen property and unlawful use of a motor vehicle) in the 7201 case and to Count 4 (second degree home invasion) in the 7324 case.  Petitioner would also plead guilty to having three prior felony convictions for purposes of Count 11, and to having two prior felony convictions for purposes of the other two counts to which he was pleading guilty.  In exchange, the prosecutor agreed to dismiss Counts 1-9 in the 7201 case and Counts 1-3 and 5 in the 7324 case.  There was no agreement as to

2

sentencing, or as to whether the sentences would be concurrent or consecutive. Petitioner faced potential maximum sentences of 30 years' imprisonment in the 7324 case, 15 years' imprisonment with respect to Count 11 in the 7201 case, and 10 years' imprisonment with respect to Count 10 in the 7201 case, with the possibility that the sentence in the 7324 case would be consecutive to the sentences imposed in the 7201 case. *See* Plea Tr., at 3-6. Petitioner's counsel confirmed the prosecutor's representations regarding the agreement, and petitioner indicated that the agreement was accurate and represented the entire agreement between the parties. *See id*. at 6-7.

The prosecutor read the charges to which petitioner was pleading guilty, and the court informed petitioner of the maximum potential sentence petitioner faced on each charge. *See id*. at 7-11. Petitioner indicated that he did not have any questions about possible penalties, and both the prosecutor and defense counsel indicated that the court had properly stated the possible sentences. *See id*. at 11. The court informed petitioner of the rights he was giving up by pleading guilty, and petitioner indicated that he understood his rights and that he would be waiving them by pleading guilty. *See id*. at 13-14. Petitioner denied that anyone had threatened him or promised him anything beyond the plea agreement to induce his plea. *See id*. at 15. After questioning petitioner to establish a factual basis for the plea, *see id*. at 15-20, the trial court accepted petitioner's pleas. *See id*. at 20. On May 21, 2003, the trial court sentenced petitioner to concurrent terms of 4½-10 years' imprisonment on the receiving stolen property conviction and 2½-15 years' imprisonment on the motor vehicle conviction, and to a consecutive term of 10-30 years' imprisonment on the home invasion conviction. Petitioner was also ordered to pay restitution in each case. On May 28, 2003, the remaining charges were dismissed pursuant to an order of *nolle prosequi*.

Petitioner moved for the appointment of appellate counsel, which the trial court denied in

accordance with then existing Michigan law.  Subsequently, in *Tesmer v. Granholm*, 333 F.3d 683

(6th Cir. 2003), the Sixth Circuit called into question the constitutionality of the Michigan

procedures for appointing appellate counsel in plea cases.  In light of *Tesmer*, on December 5, 2003,

the trial court appointed counsel to represent petitioner in both cases.  On May 21, 2004, petitioner

filed a motion for resentencing in both cases, raising the following claims:

> I.   THE COURT SHOULD VACATE THE JUDGMENT OF SENTENCE IN FILE 02-7201 WHERE THE COURT DISMISSED THE ENTIRE CASE BY ORDER DATED MAY 28, 2003.

> II.  MR. HART IS ENTITLED TO RESENTENCING WHERE THE COURT IMPROPERLY ENHANCED THE SENTENCES UNDER THE HABITUAL OFFENDER LAWS WHERE NO HABITUAL OFFENDER NOTICE WAS FILED IN 03-7324 FH, AND THE NOTICE FILED IN 02-7201 WS GROSSLY UNTIMELY.

> III. ONLY ONE CRIME VICTIMS RIGHTS FEE IS PERMITTED PER CASE.

On September 27, 2004, the parties filed in the trial court a conditional stipulation to amend the

judgment of sentence.  The stipulation provided that if

> there is a decision from the United States Supreme Court, or a federal appellate court decision which both parties agree definitively resolves the issue, that the rule of <u>Blakely v. Washington</u>, 542 US ___, 124 S CT 2531 (2004), does NOT apply in Michigan, that the pending Motion for Resentencing should be GRANTED IN PART AND DENIED IN PART.  The May 21, 2003, Judgment of Sentence shall be amended as follows:

> File 03-7324FH:    –Sentence for Count 4 changed to 10 to 22½ years imprisonment.

> File 02-7201FH:    –Sentence for Count 10, changed to a *third* habitual offender and sentence changed to 3 to 7½ years imprisonment.  Credit changed to <u>*205*</u> days.
> –Sentence for Count 11, still as a *fourth* habitual offender, changed to 1½ to 10 years imprisonment.  Credit changed to <u>*205*</u> days.
> –The Crime Victims Rights Fee shall be amended to $60 (not $120).

All parties further agree that if there is a decision of the United States Supreme Court, or if there is a federal appellate court decision which both parties agree definitively resolves the issue, that the rule of Blakely v. Washington, 542 US ___, 124 S CT 2531 (2004), does apply in Michigan, this stipulation shall not take effect and shall be VACATED, and the Motion for Resentencing shall be considered pending and unresolved, and the parties shall reschedule the matter for oral argument.  If there is not definitive decision on the applicability of the Blakely decision to Michigan, Defendant shall have the option to either enter or vacate this stipulation.  In any event, it is the responsibility of Defendant's appellate counsel to contact the Court and the Prosecutor to finalize this stipulation.

Pet., Appx. 51-52.  The stipulation was signed by the prosecutor, defense counsel, and petitioner.

On July 21, 2006, petitioner filed a motion to vacate the conditional stipulation to amend the sentence.  The trial court denied the motion on August 14, 2006.

On November 4, 2009, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

I.      THE 21 MAY 2003 DECISION OF THE CLINTON COUNTY CIRCUIT COURT IMPOSING A 4½ - 10 YEAR PRISON SENTENCE FOR VIOLATION OF MICHIGAN'S RECEIVING AND CONCEALING STOLEN PROPERTY STATUTE IS VOID IN THAT THE TRIAL COURT WAS DIVESTED OF JURISDICTION OF THE CHARGE PURSUANT TO WELL SETTLED PRINCIPLES OF MICHIGAN NOLLE PROSECUI [sic] LAW. AS SUCH, THE PRISON SENTENCE IS CONTRARY TO HART'S FOURTEENTH AMENDMENT RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION AS SET FORTH IN MITCHELL V. HAURER AND INVOLVED AN UNREASONABLE INTERPRETATION OF CLEARLY ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME COURT OF THE UNITED STATES.

II.     THE 21 MAY 2003 DECISION OF THE CLINTON COUNTY CIRCUIT COURT IMPOSING A 360 MONTH MAXIMUM PRISON SENTENCE FOR VIOLATION OF MICHIGAN'S HOME INVASION SECOND DEGREE STATUTE (MCL § 750.110A[3]) WITH A HABITUAL OFFENDER SENTENCE ENHANCEMENT IS VOID IN THAT THE PROSECUTOR FAILED TO PROVIDE NOTICE OF ENHANCEMENT OF THE UNDERLYING OFFENSE.  AS SUCH, THE PRISON SENTENCE IS CONTRARY TO HART'S FOURTEENTH AMENDMENT RIGHTS UNDER THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION AS SET FORTH IN COLE V. ARKANSAS, IN

5

RE OLIVER, AND JACKSON V. VIRGINIA AND INVOLVED AN
UNREASONABLE INTERPRETATION OF CLEARLY ESTABLISHED
FEDERAL LAW AS DETERMINED BY THE SUPREME COURT OF
THE UNITED STATES.

III.     THE 21 MAY 2003 DECISION OF THE CLINTON COUNTY CIRCUIT
COURT IMPOSING A 120 MONTH MAXIMUM PRISON SENTENCE
FOR VIOLATION OF MICHIGAN'S RECEIVING AND CONCEALING
STOLEN PROPERTY $1,000.00 - $20,000.00 STATUTE (MCL §
750.535[3][a]), AND 180 MONTH MAXIMUM PRISON SENTENCE FOR
VIOLATION OF MICHIGAN'S UNLAWFUL USE OF A MOTOR
VEHICLE STATUTE (MCL § 750.414), IS NOT SUPPORTED BY
NOTICE OF INTENT TO SEEK HABITUAL OFFENDER SENTENCING;
CONTRARY TO HART'S FIFTH AND FOURTEENTH AMENDMENT
RIGHTS UNDER THE UNITED STATES CONSTITUTION AS SET
FORTH IN IN RE OLIVER AND FARRETA V. CALIFORNIA AND
INVOLVED AN UNREASONABLE INTERPRETATION OF CLEARLY
ESTABLISHED FEDERAL LAW AS DETERMINED BY THE SUPREME
COURT OF THE UNITED STATES. THEREFORE, HART IS ENTITLED
TO   RESENTENCING   WITHOUT   HABITUAL   OFFENDER
ENHANCEMENT.

IV.     HART WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL AND
APPELLATE COUNSEL; CONTRARY TO HIS RIGHTS UNDER THE
SIXTH AND FOURTEENTH AMENDMENTS AS SET FORTH IN
STRICKLAND V. WASHINGTON AND EVITTS V. LUCEY. THUS,
THE   CONVICTION   INVOLVED   AN   UNREASONABLE
INTERPRETATION OF CLEARLY ESTABLISHED FEDERAL LAW AS
DETERMINED BY THE SUPREME COURT OF THE UNITED STATES.

The trial court denied petitioner's motion on February 2, 2010. The Michigan Court of Appeals

denied petitioner's application for leave to appeal raising these same claims in a standard order,

based on petitioner's "failure to establish entitlement to relief under MCR 6.508(D)." *People v.

Hart*, No. 296528 (Mich. Ct. App. May 13, 2010). On petitioner's subsequent application for leave

to appeal to the Michigan Supreme Court, the court remanded the matter to the trial court to amend

the judgment of sentence in accordance with the parties' conditional stipulation, in light of state and

federal court decisions holding *Blakely* inapplicable to Michigan sentences. *See People v. Hart*, 488

Mich. 951, 951, 791 N.W.2d 106, 106-07 (2010).  In all other respects, the court denied petitioner's application for leave to appeal.  *See id*. at 952, 791 N.W.2d at 107.  On March 24, 2011, in accordance with the terms of the stipulation, the trial court amended the judgment of sentence to a term of 10-22½ years' imprisonment on the home invasion conviction, consecutive to concurrent terms of 3-7½ years imprisonment on the receiving stolen property conviction and 1½-10 years' imprisonment on he motor vehicle conviction.

On April 6, 2011, petitioner filed an application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Western District of Michigan.  On April 28, 2011, the Western District transferred the petition to this Court.  As grounds for the writ, petitioner raises the four claims that he raised in his state court motion for relief from judgment.  Respondent filed his answer on November 7, 2011.  He contends that petitioner's application is barred by the statute of limitations, and that petitioner's claims are without merit.  Petitioner submitted a letter dated November 29, 2011, in reply to respondent's answer.[1]

B.    *Statute of Limitations*

Respondent first contends that petitioner's claims are barred by the one year statute of limitations applicable to habeas corpus petitions.  Signed into law on April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), in relevant part, amended 28 U.S.C. § 2244 to provide a one year statute of limitations for habeas petitions.  Specifically, the statute as amended by the AEDPA provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The

---

[1]Because the reply was submitted as a letter addressed to me, it was not originally docketed and filed by the Clerk.  I have instructed the Clerk to do so, and the letter now appears on the Court's docket.

limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review of the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).[2]  Under subparagraph (A) of § 2244(d),

a judgment of conviction does not become "final" . . . until the Supreme Court affirms the conviction and sentence on the merits or denies a timely filed petition for certiorari.

In addition, if a defendant does not file a certiorari petition, the judgment of conviction does not become "final" until the time for seeking certiorari review expires.

*Kapral v. United States*, 166 F.3d 565, 570-71 (3d Cir. 1999); *see also*, *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997) (conviction became final upon denial of certiorari); *Torres v. Irvin*, 33 F. Supp. 2d 257, 271 (S.D.N.Y. 1998) ("[A] judgment of conviction only becomes final upon the expiration of the ninety days to seek a writ of certiorari from the United States Supreme Court."); *United States v. Dorsey*, 988 F. Supp. 917, 918 (D. Md. 1998) (same); *cf. Penry v. Lynaugh*, 492 U.S. 302, 314 (1989) (for purpose of determining whether application of new rule of law would be an impermissible retroactive application to a case which has already become final, conviction becomes final upon denial of the defendant's petition for certiorari); *Griffith v. Kentucky*,

---

[2]The AEDPA codified a one-year statute of limitations provision for motions to vacate federal convictions brought under 28 U.S.C. § 2255 which is nearly identical to the one found in § 2244(d)(1). *See* 28 U.S.C. § 2255 para. 6.  Accordingly, cases discussing the § 2255 statute of limitations are applicable here.

479 U.S. 314, 321 n.6 (1987) ("By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."). Further, under § 2244(d)(2), the limitations period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]"

Respondent argues that petitioner's conviction became final on May 21, 2004, when the one year from the date of sentence in which petitioner could file an appeal under state law expired. Therefore, respondent argues, the limitations period expired on May 22, 2005, absent tolling. Respondent agrees that the limitation period was tolled by the filing of petitioner's motion for resentencing, but contends that the proceedings on that motion ended with the entry of the conditional stipulation to amend the sentence on September 27, 2004, and thus the limitations period expired on September 27, 2005. Because petitioner did not file his state court motion for relief from judgment until November 2009, respondent argues, the petition is untimely. Although respondent's argument is not without some merit, the argument requires the resolution of difficult questions the answers to which are far from clear. First, there is a question as to whether the stipulated order in fact terminated the motion for resentencing so that it was no longer pending for purposes of § 2244(d). The stipulated order was expressly conditioned on a determination by the United States Supreme Court or a federal appellate court as to whether or not the *Blakely* rule applies in Michigan. There was no time limit in the order for effectuating the terms of the order. And, indeed, it was on the basis of this supposedly long-resolved motion that the Michigan Supreme Court remanded the matter to the trial court in 2010, suggesting that the proceedings on that motion remained pending up until that time. This is an apparently unique circumstance, on which the case law developed

under § 2244(d) provides little guidance.  Second, the trial court in fact entered an amended judgment of sentence on March 24, 2011.  As the Sixth Circuit has explained, the statute of limitations "begins to run on a habeas petition that challenges a resentencing judgment on the date that the resentencing judgment became final, rather than the date the original conviction became final." *Linscott v. Rose*, 436 F.3d 587, 591 (6th Cir. 2006).  It is true that the Sixth Circuit has held that this rule applies only to habeas challenges to the resentencing decision itself, not to the underlying conviction, *see Bachman v. Bagley*, 487 F.3d 979, 982-85 & n.3 (6th Cir. 2007), but given that the amended judgment of sentence repeats what petitioner contends are the alleged errors in his sentencing, it is arguable that the *Bachman* rule is inapplicable here.  Further, it is arguable whether *Bachman* is good law in light of dicta in *Burton v. Stewart*, 549 U.S. 147, 156-57 (2007) (per curiam).  *See Johnson v. Warden, Lebanon Corr. Inst.*, 1:09cv336, 2010 WL 2889056, at *6 (S.D. Ohio June 23, 2010); *Bennett v. Wolfenbarger*, No. 2:10-CV-11054, 2010 WL 2231798, at *2 n. 1 (E.D. Mich. June 2, 2010) (Taylor, J.).

Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999) (internal citations omitted).  Because the statute of limitations does not constitute a jurisdictional bar to habeas review, a federal court, can, in the interest of judicial economy, proceed to the merits of a habeas petition. *See Smith v. State of Ohio Dept. of Rehabilitation,* 463 F. 3d 426, 429 n. 2 (6th Cir. 2006) (quoting *Trussell v. Bowersox,* 447 F. 3d 588, 590 (8th Cir. 2006)).  Because the limitations issue in this case is difficult, and as explained below petitioner's claims are without merit, the Court should simply deny the petition on

10

the merits. *See Ahart v. Bradshaw,* 122 Fed. Appx. 188, 192 (6th Cir. 2005).

C.      *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy,* 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim--
>      (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>      (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also, Bell v. Cone*, 535 U.S. 685, 694 (2002). "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also, Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court

to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme]

11

Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its

12

decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).[3]

---

[3]Here, there is no question that the deferential standard of review under § 2254(d) is applicable to petitioner's claims. In connection with petitioner's motion for relief from judgment, the Michigan Supreme Court denied petitioner's application for leave to appeal (except with respect to the amended sentence stipulation) in a standard order, because it was "not persuaded that the questions presented should be review by this Court." *Hart*, 488 Mich. at 952, 791 N.W.2d at 107. The Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order, based on petitioner's "failure to establish entitlement to relief under MCR 6.508(D)." *People v. Hart*, No. 296528 (Mich. Ct. App. May 13, 2010). Both of these orders are simple, unexplained denials, and the Court must therefore "look through" these orders to the trial court's decision. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). And it is clear that the trial court resolved petitioner's claims on the merits. *See People v. Hart*, No. 03-7324-FH, at 2 (Clinton County, Mich., Cir. Ct. Feb. 2, 2010) ("All of the materials relating to the present motion have been reviewed by the Court . . . and it plainly appears on

D.     *Jurisdiction to Sentence Petitioner (Claim I)*

In his first claim, petitioner contends that the trial court lacked jurisdiction to impose the sentences on the receiving stolen property and motor vehicle convictions in the 7201 case, because those charges were dismissed by the court's order of *nolle prosequi*.  This claim is without merit.

First, this claim is not cognizable on habeas review.  It is well-established that habeas review does not extend to questions of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). "A determination of whether a state court is vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976) (per curiam); *accord Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996); *Wesselman v. Seabold*, 834 F.2d 99, 102 (6th Cir. 1988); *United States ex rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 2d 1004, 1013 (N.D. Ill. 2001).[4]

---

the basis of that review that Mr. Hart is not entitled to the relief he seeks.").  The trial court's thus "adjudicated [petitioner's claims] on the merits" under § 2254(d)(1), regardless of the fact that the court's determination was not accompanied by a detailed analysis of the claims.  *See Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011).

[4]Petitioner contends that the state court's judgment is contrary to *Mitchell v. Haurer*, 293 U.S. 237 (1934), which petitioner characterizes as holding that "pursuant to the Fourteenth Amendment's guarantee of due process of law that a court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." Pet., at 5.  *Mitchell* merely discusses the subject matter jurisdiction of the federal courts, and does not discuss any issue of federal constitutional law, under the Due Process Clause or otherwise.  Further, even assuming that the rule petitioner asserts is a correct statement of the law, that rule does not speak to the question of who determines whether jurisdiction is lacking.  As the cases cited above demonstrate, with respect to the jurisdiction of state courts, it is the state courts themselves that determine the scope of jurisdiction.  Thus, the state court's decision was not "contrary to" *Mitchell.*

Second, petitioner cannot show that the trial court was deprived of jurisdiction under state law. At the time petitioner entered his plea, it was clear that he was pleading guilty to amended Counts 10 and 11 of the information in the 7201 case, charging receiving and concealing stolen property and unlawful use of a motor vehicle, and that in exchange the prosecutor would dismiss Counts 1 through 9 of the information. *See* Plea Tr., at 3-4, 6-7, 9-10. Petitioner was sentenced on these two counts on May 21, 2003, prior to the dismissal of any charges and at a time when the trial court, therefore, still had jurisdiction. After sentencing, the prosecutor filed a Motion/Order of *Nolle Prosequi* with respect to Counts 1 through 9, in accordance with the plea agreement. That motion and order, signed by the trial judge on May 28, 2003, contained two errors. First, it incorrectly listed Count 9 as the receiving and concealing stolen property charge. Second, the box next to the entry "Motion for nolle prosequi is granted and the case is dismissed without prejudice" was checked, rather than the box next to the entry listing the specific counts which were to be dismissed without prejudice. *See* Answer, Appx. G. The prosecutor filed a motion to amend the order of *nolle prosequi*, which was granted on November 3, 2011.

Petitioner is correct that, in most instances, the entry of an order of *nolle prosequi* divests the trial court of jurisdiction. *See People v. Ostafin*, 112 Mich. App. 712, 719, 317 N.W.2d 235, 238 (1982). However, petitioner cites no authority for the proposition that an order of *nolle prosequi* voids a previously imposed, valid sentence. On the contrary, entry of a *nolle prosequi* after sentence has been imposed would violate that well-established rule that, once a trial court has imposed a valid sentence, that sentence may not be set aside and a new sentence imposed. *See People v. Whalen*, 412 Mich. 166, 169, 312 N.W.2d 638, 639-40 (1981) (per curiam); *People v. Wybrecht*, 222 Mich. App. 160, 170, 564 N.W.2d 903, 908 (1997). Although the Michigan courts have not had occasion

15

to address this issue, decisions from other jurisdictions support this conclusion.  Most on point is the decision of the Florida Court of Appeals in *Flores v. State*, 958 So. 2d 1026 (Fla. Ct. App. 2007), a case very similar to the one before the Court.  In *Flores*, the defendant pleaded guilty to Count 2 of a four count information, in exchange for the prosecutor's agreement to *nolle prosequi* the other three counts.  The *nolle prosequi* filed at the time of sentencing, however, erroneously indicated that Count 2, along with Counts 3 and 4, were dismissed.  Neither the parties nor the judge noticed the error, and the judge sentenced the defendant on Count 2 in accordance with the plea agreement.  On the defendant's subsequent motion to vacate the sentence, the court entered an order clarifying that the *nolle prosequi* order applied to Count 1, not Count 2.  *See id.* at 1026-27.  On appeal, the court rejected the defendant's argument that the sentence was void because of the general rule that "any action taken subsequent to the filing of the nolle prosequi is a nullity."  *Id.* at 1027 (internal quotation omitted).  The court explained that, notwithstanding this general rule, "the State has no power to nolle pros a charge after jeopardy has attached.  Therefore, the State has no authority to *nolle pros* a charge after a jury is sworn, or after a judge accepts a plea to the charge."  *Id.*  The court continued: "Because the judge had already accepted Flores' plea to the charge in count 2, the State had no authority to *nolle pros* count 2 prior to sentencing. Therefore, the purported *nolle pros* of count 2 was itself a nullity, and the sentence entered on count 2 was legally imposed."  *Id.*  Cases from other jurisdictions reach similar conclusions.  *See Satterwhite v. State*, 36 S.W.3d 145, 148 (2000) (*nolle prosequi* order which purported to dismiss entire action because of clerical error did not deprive court of jurisdiction; at time court entered *nolle prosequi* order, it lacked power to enter *nolle prosequi* order because judgment of sentence had already been entered; statute authorizing *nolle prosequi* "does not authorize a trial court, upon a State's attorney's motion, to dismiss a case

16

already reduced to final judgment."); *People v. Artis*, 902 N.E.2d 677, 689 (Ill. 2009) ("[T]he power of the prosecutor to nol-pros a charge extends throughout the trial proceeding up until the time sentence is imposed."). There is no reason to believe that the Michigan courts would come to a different conclusion.

Further, regardless of the validity of petitioner's initial sentence, petitioner was resentenced in December 2011 pursuant to the stipulation entered into between the parties. Prior to that sentencing, on November 3, 2011, the trial court entered a corrected order of *nolle prosequi*, which does not purport to dismiss the receiving stolen property charge. The Michigan Court Rules applicable to criminal proceedings provide that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court *at any time* on its own initiative or on motion of a party, and after notice if the court orders it." MICH. CT. R. 6.435(A) (emphasis added). Petitioner has pointed to no authority, and I have found none, that holds or suggests that this rule is inapplicable to an order of *nolle prosequi*. Thus, at the time the amended sentence was imposed, the charges upon which petitioner was sentenced had not been dismissed by the order of *nolle prosequi*.

In short, petitioner's claim that the trial court lacked jurisdiction raises a question of state law not cognizable on habeas review and, even if the claim were cognizable, petitioner has failed to show that the trial court lacked jurisdiction under state law. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.      *Habitual Offender Notice (Claims II and III)*

Petitioner next contends that the prosecution failed to comply with the Michigan habitual offender statutes in providing notice of its intent to seek habitual offender sentencing. The Court

17

should conclude that petitioner is not entitled to habeas relief on these claims.

Petitioner's claim that he received inadequate notice of the habitual offender charge under Michigan law does not state a claim that is cognizable in federal habeas review. *Tolbert v. LeCureaux,* 811 F. Supp. 1237, 1240-1241 (E.D. Mich. 1993). Due process does not require advance notice that a trial on a substantive criminal charge will be followed by an habitual offender charge. As a matter of due process, petitioner was entitled only to reasonable notice of the prosecutor's intent to seek an enhancement based on petitioner's habitual offender status and an opportunity to challenge that status. *See Oyler v. Boles*, 368 U.S. 448, 452 (1962). It was clear that petitioner, as part of his plea, would plead to having two prior felony convictions for purposes of the receiving stolen property and second degree home invasion charges, and to having three prior felony convictions for purposes of the motor vehicle charge. *See* Plea Tr., at 4-5. Petitioner indicated that he understood the agreement, *see id*. at 6-7. The prosecutor set forth the prior convictions underlying the enhanced sentences, *see id*. at 8-9, and the trial court explained to petitioner the sentencing ramifications of those prior convictions, *see id*. at 10. Petitioner explicitly admitted "at least three of the prior convictions" that were set forth in court. *Id*. at 11-13. Neither petitioner nor his counsel raised any objection to the enhanced penalties at sentencing, and petitioner explicitly stipulated to being sentenced as an habitual offender in the conditional stipulation entered into by the parties. The record clearly indicates that petitioner had ample notice of the habitual offender enhancement. Due process required nothing more, *see Oyler*, 368 U.S. at 452-54, and any failure by the prosecutor to comply with the Michigan habitual offender statute raises an issue of state law not cognizable on habeas review. *See Randolph v. Romanowski*, No. 2:06-CV-11201, 2007 WL 4181269, at *11 (E.D. Mich. Nov. 27, 2007) (Cleland, J.); *McCann v. Trombley*, No. 05-CV-

72556, 2007 WL 2318730, at *14 (E.D. Mich. Aug. 10, 2007) (Steeh, J., adopting report of Komives, M.J.); *Taylor v. Jones*, No. 05-CV-73909, 2007 WL 1725384, at *12-*13 (E.D. Mich. June 13, 2007) (Edmunds, J.); *Ivory v. Jackson*, No. 04-CV-71279, 2005 WL 1030325, at *9 (E.D. Mich. Apr. 27, 2005) (Roberts, J.).[5]

Moreover, any claim that the habitual offender notice was inadequate is precluded by petitioner's guilty plea. "It is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects." *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005). As the Supreme Court has explained:

> A guilty plea represents a break in the chain of events which had preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Petitioner's claim that the prosecution failed to comply with the notice requirements of the habitual offender statutes is an antecedent error that is waived by his guilty plea. *See Randolph*, 2007 WL 4181269, at *11; *Tolbert*, 811 F. Supp. at 1241. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his second

---

[5]Petitioner contends that the state court's habitual offender sentencing is contrary to *Cole v. Arkansas*, 333 U.S. 196 (1948), *In re Oliver*, 333 U.S. 257 (1948), and *Jackson v. Virginia*, 443 U.S. 307 (1979). These cases merely set forth the general and well-understood principle that due process requires, prior to conviction, that a defendant have notice of the specific charge against him and a right to be heard on that charge. *See Jackson*, 443 U.S. at 315; *Oliver*, 333 U.S. at 274; *Cole*, 333 U.S. at 201. The Court's decision in *Oyler*, however, makes clear that notice of habitual offender status need not comply with state law nor be made prior to trial on the substantive charge to satisfy the due process requirement of notice and an opportunity to be heard. As explained above, so long as notice is sufficient to provide a defendant a chance to contest the habitual offender charge, due process is satisfied. And because, for the reasons explained above, the notice given to petitioner was more than sufficient to satisfy the *Oyler* standard, his sentences are not "contrary to" *Jackson*, *Oliver*, or *Cole*.

and third claims.

F.      *Ineffective Assistance of Counsel (Claim IV)*

Finally, petitioner contends that his trial and appellate attorneys rendered constitutionally ineffective assistance of counsel by failing to raise the above claims at the trial court or on appeal. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed  questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the

20

prejudice prong, the reviewing court must determine, based on the totality of the evidence before

the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would

have had a reasonable doubt respecting guilt." *Id*. at 695.  It is petitioner's burden to establish the

elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818,

833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v.*

*Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

      With respect to appellate counsel, it is well established that "appellate counsel . . . need not

(and should not) raise every nonfrivolous claim, but rather may select from among them in order to

maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing

*Jones v. Barnes*, 463 U.S. 745 (1983)).  Although it is "possible to bring a *Strickland* claim based

on counsel's failure to raise a particular claim, . . . it is difficult to demonstrate that counsel was

incompetent." *Id*.  As a general rule, it is "'only when ignored issues are clearly stronger than those

presented [that] the presumption of effective assistance of counsel [can] be overcome.'" *Id*. (quoting

*Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).  Further, in the appellate counsel context, to

demonstrate prejudice petitioner must show a reasonable probability that his claims would have

succeeded on appeal.  *See id*. at 285-86; *Benning v. Warden*, 345 Fed. Appx. 149, 155-56 (6th Cir.

2009); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996).

      As the Supreme Court has recently explained, *Strickland* establishes a high burden that is

difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v.*
> *Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An
> ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the Strickland standard must

be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

Petitioner contends that both trial and appellate counsel were ineffective for failing to raise the claims discussed above.  For the reasons discussed in connection with those claims, petitioner cannot show a reasonable probability that the result of the proceeding would have been different had counsel raised these claims, and thus he cannot establish prejudice.  As explained above, petitioner has pointed to nothing to show that, under state law, the mistaken order of *nolle prosequi* voided the trial court's previously imposed, valid sentence, or that the correction of the clerical error under Rule 6.435 was ineffective.  Thus, he cannot show a reasonable probability that a challenge to his sentence on the basis of the *nolle prosequi* order would have succeeded.  Likewise, as explained

above petitioner's plea waives any challenge to the prosecutor's failure to comply with the habitual offender notice statute, and this rule is applied as a matter of state law by the Michigan courts. *See People v. Lannom*, 441 Mich. 490, 490 N.W.2d 396 (1992) (per curiam). Thus, a challenge to petitioner's habitual offender sentencing would not have succeeded in the state courts. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

G.     *Recommendation Regarding Certificate of Appealability*

1.     *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to

23

deserve encouragement to proceed further.'"" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893

n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new

Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C.

§ 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254

Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court

must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a

certificate of appealability "state the specific issue or issues that satisfy the showing required by §

2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of

Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not

issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory

committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either

grant or deny the certificate of appealability at the time of its final adverse order, I include a

recommendation regarding the certificate of appealability issue here.

2. *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the

Court should also conclude that petitioner is not entitled to a certificate of appealability. As

explained above, it is clear that petitioner's jurisdiction claim is not cognizable on habeas review,

and that in any event petitioner cannot show that the trial court lacked jurisdiction either at the time

24

of the original sentence or at the time of the amended sentence.  Thus, the resolution of petitioner's jurisdiction claim is not reasonably debatable.  Further, it is clear that petitioner received adequate notice of the habitual offender enhancement to satisfy the Due Process Clause, and that any failure to comply with the Michigan habitual offender statutes is not cognizable on habeas review.  It is further clear that petitioner's guilty plea waived any challenge to the prosecutor's failure to comply with the habitual offender statutes.  Thus, the resolution of petitioner's habitual offender claims is not reasonably debatable.  Finally, because the resolution of petitioner's underlying claims is not reasonably debatable, it follows that the conclusion that petitioner cannot show prejudice from his trial and appellate attorneys' failure to raise these claims is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

H.     *Conclusion*

        In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

        The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of

objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                                   s/Paul J. Komives
                                   PAUL J. KOMIVES
                                   UNITED STATES MAGISTRATE JUDGE

Dated: 12/7/12


| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on December 7, 2012. |
|---|
| s/Eddrey Butts<br>Case Manager |